IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Mary Cathy Purvis, ) | C/A No.: 3:15-2238-JMC-SVH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| Lutheran Hospice d/b/a The Lutheran ) | REPORT AND RECOMMENDATION |
| Homes of South Carolina, Inc. and The ) | |
| Lutheran Homes of South Carolina d/b/a ) | |
| Lowman Homes, ) | |
| ) | |
| Defendant. ) | |
| ) | |

In this employment discrimination case, Mary Cathy Purvis ("Plaintiff") is suing her former employer, The Lutheran Homes of South Carolina, Inc.[1] ("Defendant"). Plaintiff alleges the following remaining causes of action: (1) discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. § 12102, *et seq.* ("ADA");[2] (2) breach of contract; (3) breach of contract/detrimental reliance; (4) bad faith failure to pay insurance; and (5) violation of the Employment Retirement Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"). [ECF No. 1]. This matter comes before the court on Defendant's motion for summary judgment. [ECF No. 17]. This matter having been fully briefed [ECF Nos. 21, 23], it is ripe for disposition.

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civ. Rule 73.02(B)(2)(g) (D.S.C.).

---

[1] Defendant asserts, and Plaintiff has not disputed, that despite the confusing caption, The Lutheran Homes of South Carolina, Inc., is the only defendant.

[2] Plaintiff withdrew her retaliation claim under the ADA. [ECF No. 21 at 33].

Because the motion for summary judgment is dispositive, this report and recommendation is entered for the district judge's consideration. For the reasons that follow, the undersigned recommends the district judge grant Defendant's motion for summary judgment.

I.     Factual Background

Plaintiff began working for Defendant on November 4, 2013. [ECF No. 17-3]. Plaintiff's offer letter states that eligibility for employee benefits "shall commence on the first of the month following sixty (60) days of employment." *Id*. In January 2014, Plaintiff broke her right ankle and other bones in her leg while at home. Pl. Dep. 69:6–12.[3] Shirley Johnson, Defendant's Human Resources Manager, placed Plaintiff on an extended medical leave of absence so that she could return to work. Johnson Dep. 28:6–14.[4] At the time of her injury, Plaintiff was not eligible for leave under the Family and Medical Leave Act ("FMLA") due to her short length of employment with Defendant. *Id*. However, Defendant held Plaintiff's position and permitted her to stay on leave for over six months, well beyond the FMLA's required twelve weeks of job-protected leave. Pl. Dep. 102:2–6.

On June 30, 2014, Plaintiff visited Defendant's office to give her direct supervisor, Amy Evans, a return-to-work note she had obtained the same day from her orthopedist, Dr. Richard McCain. Pl. Dep. 70:24–71:14, 85:22–86:2. Evans and Johnson observed

---

[3] Excerpts of Plaintiff's deposition may be found at ECF No. 17-2.
[4] Johnson's deposition may be found at ECF No. 21-8.

2

that Plaintiff was in good spirits, but she was not standing or walking in a stable manner and was using a cane and boot. *Id.*; Johnson Dep. 25:99–20.

The return-to-work note indicated that Plaintiff had been under Dr. McCain's care from January 12, 2014, through June 30, 2014, and stated that she "can return to work @ Lowman Home full duty." [ECF No. 21-3 at 2]. Because Plaintiff had been wearing a boot, using a cane, and had been driven to Defendant's office, Johnson determined that Defendant needed clarification from Dr. McCain regarding whether Plaintiff could safely perform the essential functions of her job with or without a reasonable accommodation. Johnson Dep. 29:17–30:16; 46:22–25; 52:10–15. Plaintiff's job description indicated she needed the ability to walk or stand for prolonged periods, lift patients and supplies, and travel daily to visit patients throughout the Midlands. [ECF No. 21-3 at 3]. Evans called Plaintiff and informed her that Defendant needed additional information and that she could not return to work on July 1. Pl. Dep. 72:7–9.

On July 1, 2014, Johnson faxed a job description and physical fitness determination test to Dr. McCain's office. [ECF No. 21-3 at 1]. In the comments portion of the coversheet, Johnson stated "Please have Dr. McCain review the attached job description as well as the physical fitness determination test for Cathy Purvis, to ensure that she is capable of returning to full function of her job requirements without any restriction." *Id.*[5] On July 2, 2014, Dr. McCain's office returned the physical fitness determination signed and dated by Dr. McCain. [*Id.*; ECF No. 17-14 at 6]. Johnson called

---

[5] The dates of the correspondence with Dr. McCain are not entirely clear, as some of the pages contain multiple dates. However, it does not appear that any discrepancy in the dates is material.

3

Dr. McCain's office and advised that Defendant needed Dr. McCain to review the job description as well. [ECF No. 17-14 at 6].

All of Defendant's employees, including Plaintiff, were required to undergo a fitness test scheduled by Defendant's health nurse, at the beginning of their employment. [ECF No. 17-5 at 26]. Plaintiff and Evans disagree generally about their communications during this time, but Plaintiff admits that Evans informed her at some point after Dr. McCain's initial return-to-work note that "they thought they were going to make [Plaintiff] do this fitness test." [ECF No. 17-8 at 47].

Sometime within the next week, Johnson received a copy of the job description and physical fitness determination from Dr. McCain with check marks indicating Plaintiff passed all requirements. *Id*. at 4. The directions indicate that pass or fail is determined by whether the task was completed, but Dr. McCain wrote "evaluation of potential" immediately beside this instruction. [ECF No. 21-3 at 1]. Plaintiff testified in her hearing before the South Carolina Department of Employment and Workforce ("SCDEW") that Dr. McCain generally knew her capabilities from his treatment of her, but did not watch her perform the items in the list one after the other in one sitting. [ECF No. 17-8 at 51–53, 103–04]. Additionally, she noted that she had performed modified versions of some items. *Id*. For instance, she had not pushed a wheelchair with 200 pounds for 100 feet, but had pushed an empty wheelchair. *Id*. at 51–52. When asked if she had lifted 20 pounds from floor to waist five times, Plaintiff responded, "Well, I don't know if it was five times, but I mean I did lift, I mean, he saw me the situation I was in with the boot and so forth[.] I mean he saw me do those things." *Id*. at 52.

4

According to Evans, after Defendant received the paperwork from Dr. McCain, she contacted Plaintiff to inform her they were "ready to move forward with [Plaintiff's] fitness screening and return her to work." [ECF No. 17-14 at 8.] According to Evans, she called Plaintiff's home and cell phones and Plaintiff's son's phone and left messages, but was unable to reach her. *Id*. Evans testified that she was concerned that she could not contact Plaintiff, as she had been in regular contact with Plaintiff since January. [ECF No. 17-8 at 30–31, 36–37]. Evans testified that she called local hospitals looking for Plaintiff and visited Plaintiff's home and knocked on the door. *Id*. Plaintiff does not recall having received any calls from Evans and denies having received any messages. [ECF No. 17-8 at 47, 49]. Plaintiff admits that she did not contact Defendant about returning after Evans told her that she may have to pass the standard fitness test. [ECF No. 17-8 at 47, 50].

Plaintiff applied for unemployment benefits on or about July 14, 2014. [ECF No. 17-8 at 79; ECF No. 17-2 at 34]. She testified in her deposition that she applied for benefits before she was terminated because she had no income. [ECF No. 17-2 at 34]. After receiving notice of Plaintiff's request for unemployment benefits, Defendant mailed Plaintiff a letter notifying her of her termination on July 25, 2014. [ECF No. 17-8 at 93].

II.   Discussion

   A.   Standard on Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that

5

summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

  B. Analysis

    1. ADA Claims

To prevail on a claim of discrimination under the ADA, a plaintiff must first make out a prima facie case, which requires establishing that: (1) she is disabled; (2) she is a qualified individual for the employment at issue; and (3) the employer took an adverse employment action because of her disability. *Equal Employment Opportunity Comm'n v. Stowe-Pharr Mills. Inc.*, 216 F.3d 373, 377 (4th Cir. 2000).

a. Disabled

Under the ADA, a "disability" includes: (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being "regarded as" having such an impairment. 42 U.S.C. § 12102(1). Plaintiff proceeds under subsection (C), alleging Defendant regarded her as having an impairment. The ADA expressly provides that a plaintiff claiming protection under the "regarded as" prong is not "disabled" within the meaning of the ADA if, objectively, the impairment at issue is both "transitory and minor." 29 C.F.R. § 1630.15(f). The ADA specifically defines "transitory" as "lasting or expected to last six months or less." *Id.* Defendant argues that Plaintiff's perceived disability was transitory because it lasted less than six months.

Plaintiff argues that her impairment lasted longer than six months because "she was out of work for more than 6 months and continued to walk with a cane up to a month after giving the Defendant her medical return to work excuse." [ECF No. 21 at 26]. However, in her affidavit, Plaintiff states that she was able to return to work when she submitted her medical excuse on June 30, 2014, and that she had been informed by her physician that she could return to work without her boot or cane. [ECF No. 21-7 at ¶ 8–9]. Plaintiff cannot simultaneously argue that the condition was resolved and also that it persisted, as "it is well-established that a genuine issue of fact is not created where the only issue of fact is to determine which of the two conflicting versions of a party's testimony is correct." *In re Family Dollar FLSA Litig.*, 637 F.3d 508, 512 (4th Cir. 2011) (quoting *Erwin v. United States*, 591 F.3d 313, 325 n. 7 (4th Cir. 2010)). Therefore the

7

undersigned finds that Plaintiff has not established that she was regarded as disabled, because her injury was transitory as defined by the ADA.

      b.  Qualified Individual

  To be considered a qualified individual, a plaintiff must show that she satisfies the "job-related requirements of the employment position," 29 C.F.R. § 1630.2(m), and can "perform the essential functions of the employment position," either "with or without reasonable accommodation," 42 U.S.C. § 12111(8). Plaintiff has not shown that at the time of her termination, she was able to perform the essential functions of her job with or without a reasonable accommodation. Defendant believed Dr. McCain's June 30, 2014 return-to-work note, indicating that Plaintiff could return to her job at full duty, was insufficient because it did not show that Dr. McCain understood what full duty entailed. The ADA expressly permits employers to make medical inquiries necessary to confirm an employee's ability to perform job-related functions. *See* 29 C.F.R. § 1630.14(c) ("A covered entity may make inquiries into the ability of an employee to perform job-related functions."). The EEOC's Interpretative Guidance to the ADA regulations clarifies that § 1630.14(c) "permits employers to make inquiries or require medical examinations (fitness for duty exams) when there is a need to determine whether an employee is still able to perform the essential functions of his or her job." *See* 29 C.F.R. § Pt. 1630, Appendix to § 1630.14(c). The guidance indicates that such an inquiry or exam is permissible upon an employee's return to work from medical leave or whenever "necessary to the reasonable accommodation process." *Id*.

Plaintiff has not presented facts showing that she was a qualified individual with a disability. Plaintiff testified that Dr. McCain knew her capabilities from his treatment of her, but admitted in her SCDEW hearing that he did not watch her perform the listed tasks in one sitting, and that she had only performed a modified version of at least one of the listed tasks. [ECF No. 17-8 at 51–53, 103–04]. When Evans sought to contact Plaintiff about scheduling a fitness exam, she was unable to get in touch with her and Plaintiff did not make any attempts to contact Defendant. In fact, rather than contacting Defendant, Plaintiff filed for unemployment benefits. Therefore, the record is devoid of information showing that Plaintiff could perform her job with or without a reasonable accommodation.

### c.     Adverse Employment Action

Defendant terminated Plaintiff, which constitutes an adverse employment action. However, there is no evidence that Plaintiff's termination was related to the alleged perception that she was disabled. The record is undisputed that Defendant terminated Plaintiff only after its attempts to contact her were unsuccessful and it received notice that she had filed for unemployment benefits.

Therefore, Plaintiff has not made a prima facie showing that Defendant discriminated against her on the basis of a perceived disability, and the undersigned recommends Defendant be granted summary judgment on Plaintiff's ADA claim.

2.     State Law Causes of Action

Plaintiff also appears to bring claims for breach of contract, breach of contract/detrimental reliance, and bad faith failure to pay insurance.[6] Plaintiff's breach of contract claim is based on the guide to benefits provided to Plaintiff. [ECF No. 21 at 33–34]. In her response brief, Plaintiff states that her "Bad Faith Failure to Pay Insurance Claim and Detrimental Reliance claims are interlinked and inseparable." [ECF No. 21 at 36]. Defendant argues that Plaintiff's state-law claims are all preempted by ERISA. [ECF No. 17-1 at 33; 23 at 14].

"ERISA comprehensively regulates, among other things, employee welfare benefit plans that, 'through the purchase of insurance or otherwise,' provide medical, surgical, or hospital care, or benefits in the event of sickness, accident, disability, or death." *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 44 (1987) (citing 29 U.S.C. § 1002(1)). Congress enacted ERISA to protect the interests of participants in employee benefit plans by providing a "uniform regulatory regime over employee benefit plans." *Aetna Health, Inc. v. Davila,* 542 U.S. 200, 208 (2004). To that end, ERISA "includes expansive pre-emption provisions . . . which are intended to ensure that employee benefit plan regulation would be 'exclusively a federal concern.'" *Id*. (citations omitted). Thus, Congress reserved to the federal government the "'sole power to regulate the field of

---

[6] The undersigned has used the exact wording of Plaintiff's complaint so as not to misrepresent any of her claims. However, the following non-exhaustive list of irregularities in the complaint make it difficult to decipher: (1) it contains two "Second Cause of Actions," one of which has been abandoned and the other which follows Plaintiff's Third Cause of Action; (2) it contains two causes of action entitled, at least in part, "breach of contract"; and (3) it contains no factual or legal allegations under her cause of action for bad faith failure to pay insurance.

employee benefit plans.'" *Marks v. Watters,* 322 F.3d 316, 322 (4th Cir. 2003) (quoting *Pilot Life,* 481 U.S. at 46,).

In light of ERISA's objectives, "the Supreme Court has explained that Congress intended ERISA to preempt at least three categories of state law: (1) laws that 'mandate[] employee benefit structures or their administration'; (2) laws that bind employers or plan administrators to particular choices or preclude uniform administrative practice; and (3) 'laws providing alternate enforcement mechanisms' for employees to obtain ERISA plan benefits. *Wilmington Shipping Co. v. New England Life Ins. Co*., 496 F.3d 326, 342 (4th Cir. 2007) *Wilmington,* 496 F.3d at 342 (quoting *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 658–59, (1995); *Coyne & Delany Co. v. Selman,* 98 F.3d 1457, 1469 (4th Cir. 1996)).

Here, Plaintiff's claims labeled as breach of contract, breach of contract/detrimental reliance, and bad faith failure to pay insurance are all preempted by ERISA, as such claims seek to provide alternate enforcement mechanisms to obtain ERISA plan benefits. *See Coyne & Delany Co. v. Selma*n, 98 F.3d at 1468–69 (4th Cir. 1996); *Stiltner v. Beretta U.S.A. Corp.*, 74 F.3d 1473, 1480 (4th Cir. 1996). Therefore, the undersigned recommends these claims be dismissed.

### 3. ERISA

Defendant argues that Plaintiff's ERISA claim should be dismissed because she failed to name CIGNA, which administered and processed Plaintiff's long term disability applications. [ECF No. 17-1 at 31–32]. Plaintiff does not address her ERISA claim or Defendant's arguments regarding this claim in any way. Therefore, it appears Plaintiff

has abandoned her ERISA claim, and the undersigned recommends Defendant be granted summary judgment on it.

III.  Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends Defendant's motion for summary judgment [ECF No. 17] be granted.

IT IS SO RECOMMENDED.

November 14, 2016                                   Shiva V. Hodges
Columbia, South Carolina                      United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).