# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| Mary Cathy Purvis, ) | Civil Action No. 3:15-cv-02238-JMC |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | **ORDER AND OPINION** |
| Lutheran Hospice d/b/a The Lutheran ) | |
| Homes of South Carolina, Inc. and The ) | |
| Lutheran Homes of South Carolina d/b/a ) | |
| Lowman Homes, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Plaintiff Mary Cathy Purvis ("Purvis" or "Plaintiff") filed this action against her former employer, Defendant The Lutheran Homes of South Carolina, Inc.[1] ("Defendant" or "Lutheran"), alleging that she was subjected to discrimination, harassment and retaliation in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101–12213, and wrongfully denied benefits in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461. (ECF No. 1 at 9 ¶ 69–11 ¶ 94 & 14 ¶¶ 117–127.) Plaintiff also alleges state law claims for breach of contract, breach of contract/detrimental reliance and bad faith failure to pay insurance. (ECF No. 1 at 11 ¶ 95–14 ¶ 127.)

This matter is before the court on Defendant's Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 17.) In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02(B)(2)(g) D.S.C., the matter was referred to United States Magistrate Judge Shiva V. Hodges for pretrial handling. On November 14, 2016, the Magistrate Judge issued a Report and Recommendation (ECF No. 24) in which she recommended that the

___

[1] The Magistrate Judge observes that there is no dispute that The Lutheran Homes of South Carolina, Inc. is the only Defendant in this action. (ECF No. 24 at 1.)

court grant Defendant's Rule[2] 56 Motion.  (Id. at 12.)  Plaintiff filed Objections to the Magistrate Judge's Report and Recommendation, which Objections are presently before the court.  (ECF No. 25.)  For the reasons set forth below, the court **ACCEPTS IN PART** the Magistrate Judge's recommendation and **GRANTS IN PART AND DENIES IN PART** Defendant's Motion for Summary Judgment.

## I.     RELEVANT BACKGROUND OF THE MATTER

The facts of this matter are discussed in the Report and Recommendation.  (ECF No. 24.)  The court concludes, upon its own careful review of the record, that the Magistrate Judge's factual summation is accurate and incorporates it by reference.  The court will only reference herein additional facts viewed in the light most favorable to Plaintiff that are pertinent to the analysis of her claims.

Defendant is "a not-for-profit ministry of the South Carolina Synod of the Evangelical Lutheran Church of America" and it "owns and manages five continuing care retirement communities, a non-medical home service and a hospice program."  Lutheran Homes of South Carolina, https://www.lutheranhomessc.org/about-us/ (last visited Mar. 29, 2017).  Plaintiff began working for Defendant as an RN case manager or nurse case manager on November 4, 2013.  (ECF Nos. 17-3 at 2 & 17-12 at 5:16–19.)  At the time of hire, Plaintiff was provided a copy of Defendant's "Employee Handbook for Lutheran Hospice."  (ECF Nos. 21-6 & 17-12 at 4:2–20.)  In addition, on November 6, 2013, Plaintiff participated in but did not either pass or fail a physical fitness screening to determine her fitness for the job.  (ECF Nos. 17-12 at 8:11–13 & 21-8 at 7:23:6–23.)

On or around January 12, 2014, Plaintiff broke her right ankle at home in a non-work-related accident.  (ECF No. 17-2 at 4:5–10 & 21:6–14.)  As a result of this injury, Defendant

---

[2] The court observes that "rule" refers to the Federal Rules of Civil Procedure.

placed Plaintiff on a medical leave of absence as if she was qualified under the Family and Medical Leave Act of 1993 ("FMLA"), even though she was not eligible for FMLA leave. (Id. at 21:15–17; see also ECF No. 17-12 at 13:6–14.)

On May 20, 2014, Shirley Johnson, Defendant's human resources manager for hospice (ECF No. 21-8 at 2:5:11–19), began to complete a Personnel Action Form for the purpose of terminating Plaintiff. (ECF No. 21-14.) On June 30, 2014, Plaintiff provided Defendant's patient care coordinator, Amy Evans, with a note from Plaintiff's treating physician, Dr. Richard S. McCain, which stated that she could return to full duty. (ECF No. 17-8 at 44:2–21.) Specifically, Dr. McCain wrote in the return-to-work note that Plaintiff had been under his care from January 12, 2014, through June 30, 2014, and that she "can return to work @ Lowman Home full duty." (ECF No. 21-3 at 2.) Notwithstanding the contents of Dr. McCain's note, Johnson observed Plaintiff on June 30, 2014, wearing a walking boot and holding a cane and perceived her to be "not stable." (ECF No. 21-8 at 7:25:14–20.) As a result, Johnson, after discussing the issue with Evans, decided that there needed to be clarification to determine if Plaintiff could return to work and perform her job with or without a reasonable accommodation. (Id. at 8:29:22–9:30:9.) Thus, at approximately 8:45 p.m. on June 30, 2014, Johnson called Plaintiff and informed her that she would not be allowed to return to work the next day. (ECF No. 17-2 at 24:7–9.)

On July 2, 2014, Johnson faxed a request to Dr. McCain to "review the attached job description as well as the physical fitness determination test for Cathy Purvis, to ensure that she is capable of returning to the full function of her job requirements without any restrictions." (ECF Nos. 21-3 at 1 & 17-8 at 8:15–26.) Thereafter, Johnson engaged in the following exchange with Dr. McCain and his office:

3

> He sent the job description back with nothing written on it, not, you know, no indication that he even reviewed it and he sent the . . . well, I had to call the doctor's office again so the fitness test he sent back to us with everything checked off as pass and the note saying evaluation of potential, well, I wasn't real sure exactly what that means so . . . meant so we had to call the doctor's office again to have him determine whether she would be able to return to the full scope of her job. And, I did say review apparently he went through and did check[] off all the items on the job description, it was only for him to take a look at to say whether or not she would be safely . . . it would be safe for her to put her through the test.

(ECF No. 17-8 at 9:16–25.)   Dr. McCain provided Johnson with a "Physical Fitness Determination" that stated that Plaintiff passed the following physical tests: "6-minute walk . . . , lift 20 pounds from the floor to waist and then waist to shoulder x 5 repetitions, carry crate with weights totaling 20 pounds for 30 feet, maintain unsupported Squat for 1 minute and rise to standing position without assistance, and push wheelchair with 200 pounds for 100 feet." (ECF No. 21-3 at 4.)

After receiving the information on Plaintiff from Dr. McCain, Johnson and Evans decided that Plaintiff needed to participate in an in-house fitness screening and Evans conveyed that information to Plaintiff on July 3, 2014. (ECF No. 17-8 at 35:21–36:10.) Thereafter, between July 8 and July 10, 2014, Evans made several attempts by phone and in person to contact Plaintiff to schedule the fitness examination but was unsuccessful. (Id. at 36:11–38:13.) Plaintiff denies that she received any calls from Evans or Johnson to schedule the fitness test. (Id. at 46:4–47:8.)

On July 14, 2014, Plaintiff filed a Charge of Discrimination (the "Charge") with the South Carolina Human Affairs Commission and the United States Equal Employment Opportunity Commission. (ECF No. 21-2 at 2.) In the Charge, Plaintiff alleged that she suffered discrimination and retaliation in violation of the ADA and checked boxes for "Retaliation" and "Disability." (Id.) She stated the following particulars:

4

> I. I am a current employee of The Lutheran Homes of South Carolina, Inc. as a hospice nurse. I have extensive experience as a hospice nurse. Recently I have suffered a heart incident and an injury to my ankle. As a result of the injury I am required to work with a cane and a brace on my foot. That my employer has informed me that I will not be permitted to use any assistive devises [sic] while at work.
>
> II. My employer has harassed my physician regarding my perceived disability and my abilities to perform my position.
>
> III. I am capable of performing any and all requirements of my position with or without accommodation. I have complained to my employer about their actions and failure to return me to work.
>
> IV. The Defendant is treating me differently than other individuals that are not perceived as disabled. My employer has not offered me any explanation for not permitting me using the assistive devices, refusing to return me to work, harassing my physician, or discriminating against me.
>
> V. I believe that I have been discriminated against because of perceived, actual or record of disability in violation of Americans with Disabilities Act. I believe that I have been retaliated against in violation of ADA."

(ECF No. 21-2 at 2.)

On July 25, 2014, Defendant informed Plaintiff by letter that her employment was terminated. The contents of the termination letter are as follows:

> This letter is to inform you that your employment with Lutheran Hospice has been terminated effective today (07/25/2014). At the time of your Medical Leave on January 13, 2014, you were advised that you did not qualify for Medical Leave under the Family Medical Leave Act due to your length of employment with Lutheran Hospice.
>
> However it is the policy of Lutheran Homes of SC to automatically terminate employment, if an employee is unable to return to full active employment status at the conclusion of his/her leave of absence or extended leave of absence.
>
> If you can provide the required confirmation from your physician, stating that you are able to demonstrate that you are fit for full active duty, then you may reapply for a position with Lutheran Homes of SC/Lutheran Hospice. We will consider your application for re-employment as we would any other applicant.

(ECF No. 21-5.)

After receiving notice of the right to sue from the EEOC as to the Charge, Plaintiff filed a

5

Complaint in this court on June 3, 2015, specifically alleging claims for disability discrimination and harassment in violation of the ADA ("Count 1"), retaliation in violation of the ADA ("Count 2"), breach of contract ("Count 3"), breach of contract/detrimental reliance ("Count 2"[3]), bad faith failure to pay insurance ("Count 4"), and violation of ERISA ("Count 5"). (ECF No. 1 at 9 ¶ 69–14 ¶ 127.) Defendant answered the Complaint on July 20, 2015, denying its allegations. (ECF No. 5.) On May 9, 2016, Defendant filed its Motion for Summary Judgment. (ECF No. 17.) Plaintiff filed a Response in Opposition to Defendant's Motion for Summary Judgment on June 2, 2016, to which Lutheran filed Defendant's Reply to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment on June 13, 2016. (ECF Nos. 21, 23.)

In accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 D.S.C., the Magistrate Judge, after reviewing the parties' summary judgment briefs and considering their arguments, issued the aforementioned Report and Recommendation on November 14, 2016. (ECF No. 24.) On December 1, 2016, Plaintiff filed Objections to the Magistrate Judge's Report and Recommendation. (ECF No. 25.)

## II.     JURISDICTION

This court has jurisdiction over Plaintiff's ADA claim via 28 U.S.C. § 1331, as the claim arises under a law of the United States, and also via 42 U.S.C. §§ 12117 & 2000e–5(f)(3), which empower district courts to hear claims by "person[s] alleging discrimination on the basis of disability." The court may properly hear Plaintiff's state law claims based on supplemental jurisdiction since they are "so related to claims in the action within such original jurisdiction that . . . it form[s] part of the same case or controversy . . . ." 28 U.S.C. § 1367(a).

---

[3] The Magistrate Judge identified this second "Count 2" as one of the irregularities in Plaintiff's Complaint. (See ECF No. 24 at 10 n.6.)

### III.     LEGAL STANDARD

A.     The Magistrate Judge's Report and Recommendation

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. See Mathews v. Weber, 423 U.S. 261, 270–71 (1976). The court reviews de novo only those portions of a magistrate judge's report and recommendation to which specific objections[4] are filed, and reviews those portions which are not objected to - including those portions to which only "general and conclusory" objections have been made - for clear error. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983); Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). The court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions. See 28 U.S.C. § 636(b)(1).

B.     Summary Judgment under Rule 56

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248–49 (1986). A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the nonmoving party. Newport News Holdings Corp. v. Virtual City Vision, 650 F.3d 423, 434 (4th Cir. 2011).

In ruling on a motion for summary judgment, a court must view the evidence in the light

---

[4] An objection is specific if it "enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." One Parcel of Real Prop. Known As 2121 E. 30th St., 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting Thomas v. Arn, 474 U.S. 140, 147 (1985)).

most favorable to the non-moving party.  Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).  The non-moving party may not oppose a motion for summary judgment with mere allegations or denial of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial.  Fed. R. Civ. P. 56(e); see Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991).  All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  Anderson, 477 U.S. at 249.  "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion."  Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995).

### IV.     ANALYSIS

A.     The Report and Recommendation

Upon her review, the Magistrate Judge concluded that Plaintiff failed to state a prima facie case of discrimination under the ADA because she was unable to demonstrate that (1) "she was regarded as disabled, because her injury was transitory as defined by the ADA" (ECF No. 24 at 8); (2) she was a qualified individual with a disability because there were no facts in the record showing that "Plaintiff could perform her job with or without a reasonable accommodation" (id. at 9); and (3) she suffered an adverse employment action as a result of her disability.  (Id.)  As to Plaintiff's state law claims for breach of contract, breach of contract/detrimental reliance and bad faith failure to pay insurance, the Magistrate Judge recommended dismissal of these causes of action on the basis that all three are preempted by ERISA.  (Id. at 11 (citing Coyne & Delany Co. v. Selman, 98 F.3d at 1468–69 (4th Cir. 1996); Stiltner v. Beretta U.S.A. Corp., 74 F.3d 1473, 1480 (4th Cir. 1996)).)  Finally, the Magistrate Judge recommends granting summary judgment

8

to Defendant on Plaintiff's ERISA claim because it appears that she has abandoned the cause of action. (Id. at 11–12.)

B.  Plaintiff's Objections

Plaintiff states both "general" and "specific" Objections to the Magistrate Judge's Report and Recommendation. In her General Objections, Plaintiff argues that the Report and Recommendation is erroneous because: (1) it recommends dismissal of Plaintiff's claims in their entirety (ECF No. 25 at 5); and (2) it stated background facts that were not in a light most favorable to Plaintiff (id. at 5–6).[5]

As to her Specific Objections, Plaintiff first argues that the Magistrate Judge erroneously ignored the fact that "Plaintiff's employer entertained a misperception and believed []he[r] impairment was substantially limiting when it was not." (ECF No. 25 at 19.) In this regard, Plaintiff asserts that "it is clear that the Ms. Johnson who made the employment decisions entertained the misperception that Ms. Purvis' ability to walk and work was limited." (Id.) Plaintiff further argues that the Magistrate Judge erroneously determined that "Plaintiff's termination was not related to her perceived disability" when the facts in the light most favorable to Plaintiff clearly demonstrate that she followed Defendant's policies, but "was terminated for a pretextual reason." (Id.) Finally, Plaintiff argues that the Magistrate Judge erroneously determined that Plaintiff's state law claims were pre-empted by ERISA because that legislation neither "cover[s] employee handbooks" nor does it cover the fraudulent "representations of an employer." (Id. at 20.) As a result of the foregoing, Plaintiff asserts that the court should reject the Report and Recommendation because it was clearly issued "in error considering the testimony on the record, the circumstances of the Plaintiff's employment and the Defendant's

---

[5] The court observes that Plaintiff thereafter provided fifty-one paragraphs of background facts that were allegedly ignored by the Magistrate Judge. (See ECF No. 25 at 6 ¶ 1–17 ¶ 51.)

intentional discrimination against the Plaintiff."  (Id.)

C.     The Court's Review

   *1. Plaintiff's General Objections*

The court observes that it is not required to provide de novo review of Plaintiff's general complaints about the Report and Recommendation, but must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  Diamond, 416 F.3d at 315.  Upon review and consideration of Plaintiff's complaints regarding the recommendation of dismissal as to all her claims and the Report's allegedly biased factual summary, the court finds that the Report and Recommendation does not contain clear error.  Accordingly, the court overrules Plaintiff's general Objections.

   *2. Plaintiff's Specific Objections*

   **a.  Plaintiff's ADA Claims**

In her Objections, Plaintiff primarily complains that the Magistrate Judge's recommendation was in error because the facts clearly demonstrate that Plaintiff was terminated as a result of her disability based on Defendant's misperception regarding the extent to which Plaintiff's impairment limited her.  The court observes that as to her claims for ADA discrimination[6] and harassment,[7] Plaintiff is required to demonstrate that she is a qualified

---

[6] Absent direct evidence, to sufficiently allege the elements of a prima facie case of discriminatory discharge under the ADA, a plaintiff must demonstrate (1) he was a qualified individual who had a disability; (2) he was terminated; (3) he was fulfilling his employer's legitimate expectations when he was terminated; and (4) the discharge gives rise to a "reasonable inference of unlawful discrimination." Reynolds v. Am. Nat'l Red Cross, 701 F.3d 143, 150 (4th Cir. 2012).

[7] Without direct evidence, a prima facie case of hostile work environment based on a disability requires the plaintiff to demonstrate: (1) he is a qualified individual with a disability; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) some factual basis exists to impute liability for the harassment to the employer. Fox v. Gen. Motors Corp., 247 F.3d 169, 177 (4th Cir. 2001).

individual with a disability.  Under the ADA, "[t]he term 'disability' means, with respect to an individual--(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3)).  42 U.S.C. § 12102(1).

In her brief, Plaintiff asserts that Defendant and in particular Johnson viewed Plaintiff as being regarded as having an impairment.  (ECF No. 21 at 23.)  "[A]n individual is 'regarded as having such an impairment' if the individual is subjected to a prohibited action because of an actual or perceived physical or mental impairment, whether or not that impairment substantially limits, or is perceived to substantially limit, a major life activity."  29 C.F.R. § 1630.2(l). However, an individual cannot be regarded as having an impairment if the impairment is transitory and minor, i.e., it has "an actual or expected duration of 6 months or less."  42 U.S.C. § 12102(3)(B).

In this matter, the duration of Plaintiff's broken ankle was 5 months and 19 days, from the date of the injury, January 12, 2014, to the date Plaintiff was cleared to return to work on June 30, 2014.  As a result, the court agrees with the Magistrate Judge that Plaintiff's injury was transitory and minor and, therefore, not an impairment under the ADA.  E.g., Clark v. Boyd Tunica, Inc., C/A No. 3:14-cv-00204-MPM-JMV, 2016 WL 853529, at *6 (N.D. Miss. Mar. 1, 2016) ("[B]roken bones, generally, are characterized as being "transitory and minor" for purposes of ADA disability definitions.") (citations omitted).  Accordingly, because Plaintiff cannot show that she was a qualified disabled individual, the court finds that the Magistrate Judge did not commit error in concluding that Plaintiff could not state a prima facie case of discrimination and/or harassment under the ADA.  In this regard, Plaintiff's Objections as to

these claims are overruled.[8]

### b. Plaintiff's State Law Claims

In this matter, Plaintiff alleged state law claims for breach of contract, breach of contract/detrimental reliance and bad faith failure to pay insurance. (ECF No. 1 at 11 ¶ 95–14 ¶ 127.) Defendant moved for summary judgment as to these claims on the basis that they were preempted by ERISA. (ECF No. 17-1 at 33.) The Magistrate Judge agreed and recommended dismissal of the claims because they were "all preempted by ERISA." (ECF No. 24 at 11.)

The court observes that "[i]n determining whether ERISA preempts a plaintiff's state law claims, the primary consideration [] requires applying the test the Fourth Circuit has adopted for determining whether ERISA completely preempts a state law claim." Hendrix v. Res. Real Estate Mgmt., Inc., 170 F. Supp. 3d 879, 887 (D.S.C. 2016) (citing Sonoco Prod. Co. v. Physicians Health Plan, Inc., 338 F.3d 366, 372 (4th Cir. 2003) (adopting the Court of Appeals for the Seventh Circuit's test for determining ERISA preemption); Tucci v. First Unum Life Ins. Co., 446 F. Supp. 2d 473 (D.S.C. 2006) (considering Sonoco in the context of a long term disability insurance plan)). "[T]he test sets forth three requirements to establish complete preemption:"

---

[8] The court observes that the Magistrate Judge did not expressly address Defendant's assertion that it was entitled to summary judgment on Plaintiff's retaliation claim because she neither "offered no evidence that she actually 'complained' of alleged discrimination" nor did she demonstrate a causal connection between her alleged discrimination complaint and her termination. (ECF No. 17-1 at 24–25.) Because the Magistrate Judge did not address Defendant's position, Plaintiff could not state an objection concerning her retaliation claim. However, the court further notes that in her Response in Opposition to Defendant's Motion for Summary Judgment, Plaintiff stated that she "hereby releases her claim for retaliation." (ECF No. 21 at 33.) As a result of the foregoing, the court sua sponte grants Defendant's Motion for Summary Judgment without prejudice as to the retaliation claim with leave for Plaintiff to move for reconsideration if the court has misapprehended her intent as to the retaliation claim.

> (1) the plaintiff must have standing under [ERISA] § 502(a) to pursue its claim; (2) its claim must fall[] within the scope of an ERISA provision that [it] can enforce via § 502(a); and (3) the claim must not be capable of resolution without an interpretation of the contract governed by federal law, i.e., an ERISA-governed employee benefit plan.

Id. (quoting Sonoco, 338 F. 3d at 372).

Upon review, the court observes that neither Defendant (ECF No. 17-1 at 33) nor the Magistrate Judge (ECF No. 24 at 10–11) addressed these factors before reaching the conclusion that Plaintiff's state law claims were preempted by ERISA. Without these factors having been addressed by the movant, the court is not persuaded that Defendant is entitled to judgment as a matter of law on this issue. As a result, the court denies the Motion for Summary Judgment on the basis of ERISA preemption as to Plaintiff's state law claims for breach of contract, breach of contract/detrimental reliance and bad faith failure to pay insurance without prejudice.

## V.   CONCLUSION

Upon careful consideration of the entire record, the court hereby **GRANTS IN PART AND DENIES IN PART** the Motion for Summary Judgment (ECF No. 17) of Defendant The Lutheran Homes of South Carolina, Inc. The Motion is granted with prejudice as to Plaintiff's claims for violating ERISA[9] ("Count 5") and for discrimination and harassment in violation of the ADA ("Count 1"). The Motion is granted without prejudice on Plaintiff's ADA retaliation claim ("Count 2"). The Motion is denied without prejudice as to Plaintiff's state law claims for breach of contract ("Count 3"), breach of contract/detrimental reliance (alternative "Count 2") and bad faith failure to pay insurance ("Count 4"). As a result of the foregoing, the court has dismissed all claims for which it has original jurisdiction. However, in its discretion, the court

---

[9] Plaintiff did not object to the Magistrate Judge's recommendation to grant summary judgment as to this claim.

will retain jurisdiction over the remaining state law claims.[10]

The court **ACCEPTS IN PART** the Magistrate Judge's Report and Recommendation (ECF No. 24) and incorporates it herein by reference.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

March 30, 2017
Columbia, South Carolina

---

[10] The Fourth Circuit explained the court's discretion as follows:

> Once the district court dismissed the federal claims against Defendants, the court had the authority to retain jurisdiction over the state law claims that were closely related to the original claims. 28 U.S.C. § 1367(a). However, the district court also had the discretion to decline to exercise supplemental jurisdiction over claims outside its original jurisdiction. 28 U.S.C. § 1367(c)(3). We have recognized that "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995). In exercising that discretion, the district court should consider "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." Semple v. City of Moundsville, 195 F.3d 708, 714 (4th Cir. 1999). In addition, the dismissal may be an abuse of discretion where the state statute of limitations expired prior to dismissal of the anchor federal claim. Edwards v. Okaloosa County, 5 F.3d 1431, 1433–35 (11th Cir. 1993); Joiner v. Diamond M Drilling Co., 677 F.2d 1035, 1043 (5th Cir. 1982).

Katema v. Midwest Stamping, Inc., 180 F. App'x 427, 428 (4th Cir. 2006).